Wells et al. *v.* Wells.

---

## MILES WELLS et al. *v.* MARY WELLS.

1. WILL: IMPLIED REVOCATION BY DEED: RULE IN RELATION TO.—A deed executed by a testator, after the publication of his will, is not a revocation of the will, unless the whole estate devised be conveyed by the deed.

2. SAME: SAME.—When the testator, after the publication of his will, executes a deed, whereby he conveys only a portion of the estate devised, the deed will operate as a revocation of the will only *pro tanto*, and to the extent of the in-

consistency between them. See Cowp. R. 90; 2 Vern. R. 720; Taber on Ex'ors, 19; 2 Ves. Jr. 428; 3 J. C. R. 148; 14 J. R. 324; 7 Term. R. 416.

3. HUSBAND AND WIFE: CONTRACTS BETWEEN.—A deed made directly from husband to wife, though void at common law, is valid in equity, if otherwise unobjectionable. See *Ratcliffe* v. *Dougherty*, 24 Miss. R. 182; *Warren* v. *Brown*, 25 Ib. 73; *Wells* v. *Treadwell*, 28 Ib. 724.

4. SAME: SAME: SETTLEMENTS IN FAVOR OF WIFE: WHEN EQUITY WILL RELIEVE.— A conveyance directly to the wife by the husband, if mutually satisfactory to them, should, in the absence of creditors or subsequent purchasers from the husband, or complaint by him or his children, be very reluctantly disturbed at the instance of collateral heirs of the husband; and a court of equity, in such a case, will assist the wife to recover the fruits of her husband's bounty, if the provision be not manifestly and palpably unreasonable.

5. WILL: MUST BE PROBATED IN JURISDICTION WHERE PROPERTY DEVISED IS SITUATED.—Before a will can be admitted in evidence, in support of title to property therein bequeathed, it must be regularly probated, in the jurisdiction where the property is situated.

6. SAME: CONFLICT OF LAWS: RIGHT OF EACH STATE TO REGULATE TRANSFER OF PROPERTY WITHIN ITS JURISDICTION.—Every sovereignty has the right to regulate and control all property, real and personal, within its jurisdiction, and to fix the rules for its transfer, both *inter vivos*, and by testament. It may adopt, or exclude, in testamentary dispositions, the *lex domicilii*, as it may deem proper: and such dispositions, as to property within its jurisdiction, are valid and binding everywhere.

7. SAME: SAME: FOREIGN PROBATE OF WILL OF TESTATOR DOMICILED HERE, VALID AS TO PROPERTY IN JURISDICTION OF THE FOREIGN TRIBUNAL.—The probate, in a foreign State, of the will of a testator who died there, but whose domicil was in this State, is ineffectual to devise property situated in this State; but it is valid as to his property situated in such foreign State, and the title of the devisee will be protected in this State, upon a subsequent removal of the property here.

8. CASES CITED AND EXPLAINED.—The cases of *Sturdivant* v. *Neill*, 27 Miss. 157, and *Morris* v. *Morris*, Ib. 847, cited and explained.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

This was a bill, filed by Mary Wells (the appellee), the widow of Bannister Wells, deceased, against Miles Wells, the administrator, and others, the sisters and heirs-at-law of said Bannister Wells, for the purpose of procuring a perpetual injunction, against suits brought by the administrator to recover certain personal estate, and actions of ejectment, brought by the heirs to recover land, and to

all which the complainant claims title; a part, by virtue of a deed made to her by said Bannister Wells, and the remainder under his last will and testament.

The bill alleged, that in 1835, the complainant and said Bannister Wells intermarried, she being then in possession in her own right, " of a large amount of property, real and personal," and the said Bannister owning " but little if any property;" that they lived together for several years, in the enjoyment of said property, "when, on the 22d day of January, 1849, the said Bannister Wells, for the purpose of returning to complainant some portion of her original means, and of securing to her a future comfortable maintenance and support, duly conveyed to her, by deed of that date, all of his real estate, and the largest portion of his personal estate." This deed is filed as Exhibit A. to the bill, and is dated 22d January, 1849, and for " the consideration of the natural love and affection which" the grantor "bears to his wife, as well as in consideration of the sum of $1000, paid by her to him," and " with the view of providing for the future welfare and comfort of his said wife, and constituting a fund of money and property for her separate maintenance and support," the grantor conveys directly to his wife (the complainant), in fee simple, about 2920 acres of land, which the deed declares to be all the land he owns in this State.

This deed also grants to the complainant, all the household and kitchen furniture, all the farming utensils, stock of hogs, horses, cattle, mules, sheep, " and everything of a personal character appertaining to his plantation and residence, in Madison county;" also, all the debts or claims due to the grantor, and his present crop of corn, cotton, fodder, &c. The deed further proceeds, "I also give and grant unto my said wife, all of the negro slaves I have this day left with her on the plantation, in Madison county," naming and describing twenty-six slaves, as those "left with his wife on the plantation." " And if any property thus left, has not, by accident, been specifically included herein, that, also, is hereby given and granted to my said wife, my intention being to reserve nothing to myself, but what I to-day carry away with me."

The *habendum* clause then declares, that his wife shall hold all the property conveyed, " free from control or ownership, on my part, whatever, except upon the condition, that my said wife shall

hereafter pay off and discharge "all the debts which he then owed."

The deed was acknowledged by Wells the same day, and recorded on the 10th February, 1849.

The bill further alleges, that complainant has remained in the use and occupation of said property, from the date of the deed, till the present time, and that she has paid all the debts of said Bannister Wells which have come to her knowledge, and is ready and willing to pay any others which she may hereafter discover.

It is further alleged, "that on or about the 6th day of February, 1849, the said Bannister Wells then being in the State of Louisiana, and in possession of all the balance of his property not included in the aforesaid deed, departed this life, leaving a last will and testament, by which he bequeathed to complainant all of said property, consisting principally of slaves;" "that said last will and testament was duly probated in the State of Louisiana, parish of Caddo; and by virtue thereof, the said property, then in Louisiana, and of which the said Bannister was seised as aforesaid, was duly delivered to complainant, and removed to her house, in Madison county, in this State."

The bill offers to file the transcript from the Louisiana courts, in relation to the probate of the will, as an exhibit, if desired; and the transcript was afterwards filed, but not marked as an exhibit. The will of Bannister Wells is also filed, as Exhibit B, and is dated 7th October, 1843. It gives all the property of the testator, of every description, to the complainant, and appoints her executrix. It is attested by only two witnesses. The schedule of the slaves owned by Wells at the time of his death, filed as an exhibit, shows that their number was seventeen.

From the Louisiana transcript, it appears, that Bannister Wells died on the — day of February, 1849, in Caddo parish, in that State, whilst *in transitu* to Texas; that soon afterwards a curator was appointed of the vacant succession, and an attorney was also appointed, to represent his absent heirs.

In March, 1849, Mrs. Wells, the complainant, filed her petition in the District Court of that State for Caddo parish, and exhibited the will above referred to, and propounded it for probate. She claimed to be universal legatee under the will, and prayed that the

property of said Wells, in the hands of the curator, might be delivered to her, as such, without a grant of letters testamentary; and she offered to pay all the debts of Wells, and agreed to be held liable for them, in the capacity of universal legatee; and, if that cannot be done, she then asked for letters testamentary. In her petition, she alleges, that Wells was domiciled in Mississippi at the time of his death, and that he was only temporarily in Louisiana, and that his will was made according to the laws of Mississippi.

The curator, and the attorney for the absent heirs, under his appointment as such, appeared and resisted this petition upon several grounds; and, among others, they insisted that the will was a forgery; and, if not, they then insisted that it was not made according to the laws of Mississippi, and that it had been revoked by the deed made by Wells to Mrs. Wells, on the 22d January, 1849, and by an instrument which she then signed, releasing to him all the balance of his estate not embraced in the deed to her; and they contended that these two instruments constituted a valid partition of the estate between Wells and wife, and that it was made upon an agreement to separate.

The District Court ordered, that the will was duly proven, and decreed that it be registered and executed, and that the curator surrender the possession of the property to Mrs. Wells, as universal legatee. From this decree the attorney for the absent heirs (still acting under his appointment from the court), and the curator, appealed to the Supreme Court of Louisiana.

This court reversed the decree, on the ground that the cause was not in a legal state of preparation for trial when it was tried, and directed further proof to be taken.

When the cause was remanded, the heirs of Wells (being the defendants in this suit) appeared, and contested the petition of Mrs. Wells to probate the will, and get possession of the property, as universal legatee. They proved the execution by Mrs. Wells, on the 22d January, 1849, of an instrument, releasing her interest to the property retained by Wells, and not embraced in his deed to her of that date, and in which she agreed to pay his debts. They also proved, by the draughtsman of these instruments, that they were executed with the view of a final separation between Wells and his wife. A great deal of other proof was taken, in relation

to the matters in issue between the parties, but it is not necessary to set it out.

The District Court again decreed in favor of Mrs. Wells, as before, and, therefore, the heirs and the curator again appealed.

The Supreme Court (as appears from the written opinions in the record) held, that the will was a Mississippi will, and was governed by the laws of this State; that it was duly executed, according to the laws of this State, and had not been revoked; but that it only operated upon property owned by the testator when it was made; and they reversed the decree of the District Court, to the extent of depriving Mrs. Wells, as legatee, of any interest in that portion of the property acquired since the date of the will. But a rehearing was granted, and the court, upon re-argument, affirmed fully the decree of the District Court, upon the authority of the case of *Doe* v. *Wynne*, 23 Miss. R. 252.

The defendants demurred to the bill, and their demurrer was overruled, and they appealed.

The cause was first argued in this court, at the October term, 1856, when the court sustained the demurrer, as to the claim set up under the will, upon the ground that the probate in Louisiana was insufficient, and overruled the demurrer, as to the balance of the bill. A re-argument was granted, which was had at this term.

*George L. Potter*, for appellants.

I. The deed of gift, under which complainant claims all of the property, except that brought back from Louisiana, is of such a character, and was made under such circumstances, and the express and implied conditions on which it was executed, have been so violated by complainant, that a court of equity will not lend its aid to enforce it.

Complainant has appealed to a court of chancery, and she must show a case on which she is entitled, in view of all the circumstances, to the relief prayed for.

She claims the seventeen slaves brought back from Louisiana, under the will which was made October 7th, 1843; and she claims all the residue of the estate under the deed of gift, which was made 22d January, 1849. In the preceding abstract we have shown that, when this deed was made, Mrs. Wells had no estate;

that at the same time she, by deed, released all claim to the seventeen slaves; and that the two deeds were made pursuant to an agreement for a final separation of husband and wife.

The first point to be noted is, that this deed of gift revoked the prior will. This court has held that, notwithstanding our statute regulating revocations, a will may be revoked by implication, as by a subsequent marriage of the testator; and that " a will may be revoked by circumstances, by implication or inference of law, by various circumstances not within the purview of the statute." It adopts the English rule on the subject. *Garrett* v. *Dabney*, 5 Cushm. 346.

" A will may be revoked by implication, or inference of law; and these revocations are not within the purview of the statute." 4 Kent, 520.

This deed of gift professes to convey a very large part of the estate of Wells to his wife, " for her future welfare and comfort, her separate maintenance and support;" and it is obvious that this provision was intended to be in lieu of that made for her by the will; it shows an intent to give a large portion of his estate presently, instead of giving all at his death. The two instruments are wholly inconsistent, and show that Wells had different intentions, with regard to the disposal of his property, at the dates of those two instruments. Considered in connection with the counter deed of release of all claims to the small residue of his property, executed at the same time by Mrs. Wells, and the fact that both constituted part of an agreement for final separation, all doubt ceases; the deed of gift revoked the will altogether. At the time of final separation, it was agreed between them that she should have the property described in the deed of gift, whilst he retained the residue, and went forth alone; and it is absurd to pretend that this arrangement did not revoke his prior will in her favor.

This revocation by implication, is " a consequence of law, uninfluenced by, and independent of any intention of, the testator to revoke or not." 1 Powell Devises, 320 (547–8).

We shall hereafter insist that this deed of gift is void; but that makes no difference, regarding it as an act of revocation. A void deed is operative as an implied revocation of a will. *Beard* v. *Beard*, 3 Atkyns, 71–2; *Shephard* v. *Shephard*, 7 John. Chan. 60.

Kent says, " Not only contracts to convey, but inoperative conveyances, will amount to a revocation of a devise, to the extent of the property affected, if there be evidence of an intention to convey, and thereby to revoke the will. A bargain and sale without enrolment, feoffment without livery of seisin, a conveyance upon a consideration which happened to fail, or a disability of the grantee to take, have all been admitted to amount to a revocation." 4 Kent, 528 ; 1 Jarm. Wills, 149 ; *Exp. Earl Ilchester*, 7 Ves. 373 ; *Vawser* v. *Jeffrey*, 2 Swanst. 288 ; Powell Devises, 344 (588) ; *Walton* v. *Walton*, 7 John. Chan. 269.

The will, therefore, stood annulled by the subsequent agreement and deeds between the parties; and Mrs. Wells had no right, in law or equity, afterward to attempt to set up that will. It was against conscience for her to do so, when she had thus agreed to a separation from Wells, and to accept the property in the deed of gift, as a full provision out of her husband's estate, for her future support. But she did, notwithstanding, attempt to set up that will and claim the property under it, and the pretence is, that she has thus secured to herself the seventeen slaves. She has thus violated the agreement on which the deed of gift was made ; and yet she now claims under it, and insists, as matter of equity, on receiving under it the whole residue of the estate of Wells !

We say, that, so long as she retains the seventeen slaves, no court of equity will aid her to get the balance of the estate, by enforcing the deed of gift. That deed, as the law declares, was intended as a revocation of the will ; and, if she now insists on the benefit of, or to claim under, the will, she cannot ask a court of equity to aid her to hold under the deed, and thus enable her to violate the intent of Wells, and her own release, and the very agreement under which the deed was made. As we shall show, no deed made like this, by a husband to his wife, can be sustained or aided, even in equity, where it conveys more than will be " a reasonable provision" for her ; and it is preposterous to claim, upon the basis of that restricted rule, and as a matter of equity, a decree which shall secure to her the whole estate of her husband. But yet, that is just what Mrs. Wells, in her bill and through her counsel, claims. Founding herself on the plea that this deed is void at law, and that courts of equity will protect " a reasonable provision" for the

wife, she comes here, parading the deed and the defunct will, and asks the chancellor to give her the whole estate ! We say there is no equity in such a demand.

Secondly. We say this deed, being made by a husband to his wife, is void, even in equity, unless it be shown that it conveys to her " only a reasonable provision" out of her husband's estate.

Courts of equity do not, as of course, hold such deeds valid. Grants from husband to wife have been declared void in equity, as at law, " being voluntary and without consideration." *Moyse* v. *Gyles*, 2 Vernon, 385 ; S. C. Finche Prec. 124 ; *Stoit* v. *Ayloff*, 1 Chan. Rep. 33.

They are absolutely void at law, and are sustained in equity only in special cases. It is therefore useless to attempt to confound law and equity, and abolish distinctions long established, to uphold this deed. The simple question is, under what circumstances and to what extent will a court of equity give effect to such a deed, from husband to wife, which is confessedly void at law ? Judge Story says, such a deed will be sustained in equity, not invariably, not as a matter of course, if no objection is shown, but " under particular circumstances." 2 Sto. Eq. § 1372.

" Courts of equity will uphold them in many cases, although, in other cases, the rule of law will be recognized and enforced. Thus, for example, if a husband should, by deed, grant all his estate or property to his wife, the deed would be inoperative in equity, as it would be in law ; for it could in no just sense be deemed a reasonable provision for her, which is all that courts of equity hold the wife entitled to." 2 Sto. Eq. § 1374.

What is the doctrine here asserted ? If such deed conveys all to the wife, it is " inoperative in equity, as it would be in law." Even a court of equity will not aid a wife claiming under such a deed ; and why not ? Because such a conveyance of all, is in no sense, " a reasonable provision" for the wife ; and courts of equity hold her entitled to only a reasonable provision out of her husband's estate. It is to be specially noticed, that where such deed conveys the entire estate to the wife, a court of equity will not carve out of the property " a reasonable provision" for her ; but declares the deed void.

The only inference that can be drawn, is, that it must appear,

to the satisfaction of the court, that the property conveyed is only a reasonable provision.

If such be the settled rule in equity, this court cannot sustain the conveyance, on the ground that it is not shown to be "palpably unreasonable." This is a mere question about what the law is; and it is immaterial what individuals may think it ought to be.

Judge Story explains the principle yet more clearly. He says: "But, on the other hand, if the nature and circumstances of the gift or grant are such, that there is no ground to suspect fraud, but it amounts only to a reasonable provision for the wife, it shall, even though made after coverture, be sustained in equity." 2 Story Eq. § 1375. And he goes on to cite cases of trifling gifts for "clothes," "personal ornaments," "pin-money," and "personal savings and profits made by her," which courts of equity have sanctioned.

We therefore insist, that it must be shown, by averment and proof, that the deed conveys but part of the husband's estate, and that the part so conveyed, is "only a reasonable provision" for the wife.

In *Beard* v. *Beard*, the husband had conveyed his whole estate to his wife, and the Court of Chancery refused to aid her at all, because it was "not in the nature of a provision, which is all the wife is entitled to." 3 Atkyns, 72.

Here the court would not interfere to give her even a reasonable provision; but held the deed wholly void, because it gave all. It must be shown, that "no more" than a reasonable provision is made. Chancellor Kent said: If such grant is "no more than a suitable and meritorious provision, the court would be inclined to assist it." *Shephard* v. *Shephard*, 7 John. Ch. 61.

This court has adopted the same rule, and sustains such grants, but in the special case where they make "only a reasonable provision" for the wife. *Ratcliffe* v. *Dougherty*, 2 Cushm. 182; *Wells* v. *Treadwell*, 6 Ib. 725.

The courts of Alabama declare the same rule. *Williams* v. *Maull*, 20 Ala. R. 721.

In view of these cases, including the decisions of this court, we reiterate the proposition, that the defendants cannot be required to show that this deed conveys property, which, regarded as a provision for the wife, is "palpably unreasonable;" but it was in-

cumbent on the complainant to aver, and to show that it contains "only a reasonable provision." Under the authorities we have cited, if this deed conveys more than a reasonable provision, it is "void in equity, as at law," and the most that can be urged in support of the bill, is, that it does not show a grant of more than a reasonable provision; that the court cannot say, from the bill, whether the grant is reasonable or unreasonable, valid or void. In other words, this defence of the bill is a plain admission that it is wholly uncertain; that complainant has not, by her bill, shown a case for relief; and will it be held that a bill is sufficient, when it leaves the right of complainant to a decree, wholly uncertain; when, if every allegation was admitted, the court could not say she was entitled to any relief?

The bill is therefore bad, because it does not set forth and show the value of the estate, the relative value of the gift, &c.; because it does not show that this gift is "only a reasonable provision" for the wife, and claim only that.

Not only does this bill fail to show the provision to be "reasonable," but it shows it to be unreasonable, and "palpably" so. Every presumption is against the complainant, who is always supposed to have stated his case as favorably as he can, for himself. In this case, Wells retained seventeen slaves, and gave his wife twenty-nine hundred and twenty acres of land, twenty-six slaves, all his stock, implements of husbandry, furniture, &c., and a crop of cotton. She took the bulk of the estate, and left him a mere fragment. It is true, she was to pay his debts, but the amount is not given; and there is no pretence to say the debts were many or large. The advanced age of Mrs. Wells is not shown, but it sufficiently appears that the parties were childless,—for the sisters of Wells are his admitted heirs. In such a case our statute declares what is a reasonable provision: the childless widow has half the personalty, and the use for life of half the realty; and Mrs. Wells can claim no more. Upon any presumption, allowable to be indulged, the court must say this gift was plainly unreasonable. It is sufficient, however, for us to insist, that complainant has not brought herself within the rule, and shown this was "only a reasonable provision."

This bill is not framed upon the idea that she is entitled to "only

a reasonable provision," and makes no case for such relief. It is founded on the will and deed, as being a full, equitable title to the whole estate, and it therefore claims all. She has the whole estate in possession, and claims the right to undisturbed possession of it all, and does not proceed at all upon the idea that "a reasonable provision is all the wife is entitled to," under any circumstances. It is absurd to say she may thus enjoin the administrator and heirs, and keep possession of the whole estate, when she is entitled to "only a reasonable provision" out of it.

If it be said that Wells intended to convey only a reasonable provision, and that so she is entitled to hold all he was willing to convey, we answer, the same arrangement would apply, equally, if he had conveyed his whole estate; but, as we have seen, the courts reject such reasoning. It is not the husband, but the court, who is to judge of the value and part of the estate proper to be given, and hence we see the courts, exercising a sound judicial discretion, refuse to sanction unreasonable gifts which the husband desired to make. In *Beard* v. *Beard*, 3 Atkyns, 72, 73, the husband thought his wife entitled to all; but the court, regarding the gift as excessive, rejected it wholly.

The heir-at-law is a favorite in all courts, and the chancellor will never disinherit him in order to give an unreasonable allowance to the wife.

Thirdly. It is shown by the complainant, that this deed was executed under, and as a part of, an agreement for a final separation between Wells and his wife. This illegal purpose is not, of course, avowed by the pleader, but it sufficiently appears, from the deed itself, and from the transcript filed by the complainant as part of her case, to constrain the court to withhold its aid. The deed recites, that Wells was to go away, and to leave Mrs. Wells in possession of his home, the plantation, and property allotted to her. The first recital shows it was made to provide for her "a separate maintenance and support;" it conveys his "dwelling-house;" it gives her all the slaves "I have left with her on the plantation," and speaks of "any property thus left," &c.; and declares his intention "to reserve nothing for myself, but what I this day carry away with me." It appears, that at the same time of the execution of this deed, Mrs. Wells, on her part, and to fulfil the agreement

for separation, executed a release to her husband, of all claim to his remaining property, viz., the seventeen slaves.  In the Louisiana transcript is the deposition of Judge Johnston, who drew the writings for the parties.  He says, they had agreed to separate, and that Wells was " going away, never to return."

Such a settlement of property, made upon agreement, by man and wife, to live separate, is contrary to the policy of the law, and void.  A court of chancery will not enforce or aid it, although it may permit the settlement to stand where the title is vested in a trustee.

" A deed of separation, entered into by husband and wife, without the intervention of a trustee, is utterly void."  2 Sto. Eq. § 1428; Clancy, Married Women, 292–3.

A settlement made on a voluntary separation, there being no trustee, will not be enforced in equity.  2 Kent. Com. 165 (176); *St. John* v. *St. John*, 11 Ves. 530; *Worrall* v. *Jacob*, 3 Meriv. 267; *Layard* v. *Johnson*, 3 Ves. Jr. 358 *et seq.*; *Carson* v. *Murray*, 3 Paige, 501; *Rogers* v. *Rogers*, 4 Paige, 517; *McCrocklin* v. *McCrocklin*, 2 B. Mon. 370; *Simpson* v. *Simpson*, 4 Dana, 140; *Beach* v. *Beach*, 2 Hill (N. Y.), 260.

In *Worrall* v. *Jacob*, the chancellor said, " I apprehend it to be now settled, that this court will not carry into execution, articles of separation between husband and wife.  It recognizes no power in them to vary the rights and duties growing out of the marriage contract, or to effect, at their pleasure, a partial dissolution of that contract.  It would seem to follow, that the court would not acknowledge the validity of any stipulation, that is merely accessory to an agreement for separation."  3 Meriv. 267–8.

In *Rogers* v. *Rogers*, it was said, that husband and wife cannot make any valid agreement, in violation of the marriage contract, and the duties they owe to society.  4 Paige, 517.

In *Mercein* v. *The People*, it was declared well worthy of consideration, whether all agreements (even those where a trustee takes the legal estate), based on the voluntary separation of husband and wife, are not absolutely void.  25 Wend. 77; see remarks of Cowen, Judge, *Mercein* v. *People*, 3 Hill (N. Y.), 399.

It is vain to pretend, that the wife can have an equity, on which to claim relief, in such a case.

We have said, it is apparent the deed was made under an agreement for separation, but we are not bound to make a showing so complete. We may rely on the general rule stated by Story. He says, the court may aid a deed from husband to wife, "if the nature and circumstances of the gift, or grant, are such, that there is no ground to suspect fraud, but it amounts only to a reasonable provision," &c. 2 Sto. Eq. § 1375.

If, therefore, there is, upon the facts disclosed by complainant, even "ground to suspect" the deed was made in fraud, or in violation of the policy of law, it will not be enforced.

There are, therefore, three distinct grounds on which the claim made under this deed of gift, must be rejected, viz.:

1. It was intended as a full and final division of property between Wells and wife, and was a revocation of the prior will. She cannot claim both under that deed, and in violation of the agreement under which it was made; and therefore, she cannot claim the seventeen negroes under the will, and also the estate under the deed. Under the rule, which allows the husband to convey to his wife "only a reasonable provision" out of his estate, she cannot ask the court to give her, as this bill claims, the entire property of the husband.

2. The bill does not show that this deed conveys "only a reasonable provision for the wife, which is all she is entitled to;" and the deed is void, even in equity, if it conveys more. It does not show that complainant is entitled to relief, and is therefore uncertain, at best, and wholly insufficient to justify a decree, even if all its allegations were confessed.

On the contrary, it does appear, that the provisions are unreasonable—"palpably unreasonable."

3. The deed is made upon agreement of husband and wife, to live separate, to divorce themselves; and a court of equity will not enforce it.

This complainant has come into chancery, and we are entitled to ask, what equity, in view of all these matters, does she show for its extraordinary interposition on her behalf?

II. The alleged will must be disregarded, for several reasons.

It has but two subscribing witnesses, and is therefore insufficient to pass the land and bar the heirs.

2d. It has never been probated, so far as the record shows, in

this State, and cannot therefore be set up as a title to the Mississippi property. Until it be proven in the proper courts of this State, the will " cannot be set up ; it can have no operation." 5 Cush. 849–50 ; Ib. 162 ; *Fotheree* v. *Lawrence*, 1 George, 416.

3d. If this will is shown to be operative, and a title to complainant, her defence at law is ample, and there is no ground for resort to equity.

4th. This court will disregard the proceedings in Louisiana, for the probate of this will.

The domicil of Wells, at his death, was in Mississippi, and the will was made here. As we have seen, this was admitted throughout the proceedings in Louisiana. On the 22d January, 1849, he executed the deed of gift, describing himself as a citizen of Mississippi, and he died only fifteen days afterward, while passing through Louisiana. Even though a party leaves with intent to abandon his domicil, that domicil continues his, until he has acquired another. *Thorndike* v. *Baston*, 1 Met. 245; *Hairston* v. *Hairston*, 5 Cushm. 721.

The courts of Louisiana did not attempt to apply the laws of that State at all, but undertook, and were painfully anxious, to ascertain and apply the laws of Mississippi to the case. Mrs. Wells made her application, there, as a citizen of Mississippi, and asked the courts of Louisiana to enforce a Mississippi will, according to Mississippi law, and to order the delivery to her of the property Wells had with him at his death, in order that she might remove it back to Mississippi, the domicil of the testator. That property was then in possession of Hardwicke, a curator of the vacant succession of Wells, a stranger. She claimed as universal legatee under the will, and proffered to take out administration under it, if necessary ; but claimed that, under the circumstances, no such administration could be required. She is named executrix in that will. The curator was cited, and an attorney for absent heirs was appointed, under the peculiar system of that State, although no notice was served on them. That attorney for the absentees proceeded to act ; he filed an answer and contested the probate. It is now pretended, although the bill does not so aver, that the heirs, who are married women, afterward appeared by attorney, and took part in those proceedings. We contend that this is not shown. Jones,

the attorney for absent heirs, alone acted, throughout, on their behalf; and there is nothing, not even a recital, to show that they actually appeared, or authorized Jones to act for them. It is pretended they appealed; but the record shows it was only Jones, the attorney appointed by the court, and that he, and not the heirs, signed the appeal bonds. Pp. 55–6. See 144–5.

Under the laws of Louisiana, the heir or universal legatee, taking possession, is bound to pay all debts; but he may take possession of the estate, on agreeing to pay debts, or refuse to incur that charge. If he so accepts, he stands as *quasi* administrator, and is entitled to possession of the property. Such was the claim of Mrs. Wells,—that of universal legatee, willing to pay all debts; and all she asked was, that the curator should deliver the property to her, that she might remove it to Mississippi; and that was all the court decreed. This bill, however, does not set up any such decree: it only avers the probate in Louisiana.

As we have seen, the court of Louisiana, only attempted to aid Mrs. Wells, a citizen of Mississippi, to obtain, under a Mississippi will, possession of property belonging to the estate of a citizen of Mississippi, and then held by a Louisiana curator; and the purpose was, that the property, when so obtained, should be removed back to Mississippi. The courts of Louisiana, accordingly, abandoned the possession thus held by them, through the curator, to Mrs. Wells, thus claiming as universal legatee; and so abandoned the property to her, in order that she might remove it back to Mississippi, the domicil of the deceased.

In passing upon her claim, the courts considered the question, whether the subsequent deed of gift would, under the laws of Mississippi, be held a revocation of the prior will. We have shown that, under our laws, that deed of gift did revoke and annul that will; but the courts of Louisiana came to a different, and a wrong conclusion. They held that, under the laws of Mississippi, the will was not revoked; and the record shows, their decision was made on that ground, and for that reason. They mistook our law; and the question arises, what effect will the courts of Mississippi give to a probate of an alleged Mississippi will, obtained, for such a purpose, from a foreign court, when our courts would reject the will altogether?

It is to be noted, that the courts of Louisiana did not attempt to deny comity; they only sought to extend comity—to aid a citizen of Mississippi to obtain property from an officer of the Louisiana court, in order that it might be removed back to Mississippi, the proper forum for probate and administration. The property was accordingly delivered up, under a mistaken view of our laws, and has been removed back here, and is now subject to the jurisdiction of our courts. We say that, under such circumstances, the courts of Mississippi will disregard the proceedings in Louisiana, and will decide the questions at issue, as if no probate had been obtained there. This court has disregarded foreign probates of Mississippi wills, and this upon the express ground, that the foreign judgment afforded no evidence that the paper was a valid will, "according to the ceremonies and solemnities of the laws of Mississippi." *Morris* v. *Morris*, 5 Cush. 850; *Sturdivant* v. *Neill*, 5 Ib. 166.

The difficulty there suggested by the court, that a Mississippi will, which was null by our laws, might be sustained by the foreign court, is a fact in this case.

Such a probate, thus obtained upon the erroneous and mistaken attempt of a foreign tribunal to apply the law of this State, plainly ought not to be enforced; and the law permits the court to correct the mistake, by disregarding the decision. As a general rule, a decision of another State could not be thus disregarded; but an exception exists in this peculiar class of cases. Story says, cases sometimes occur, in which the tribunals of a foreign country are called upon to decide upon the laws of another country, where the contract is made; and if they, by mistake, misinterpret that law, the courts of the latter country will disregard the decision, and proceed, precisely as if it had not been made. Story Confl. Laws, § 269.

The English courts hold the same view. *Novelli* v. *Rossi*, 22 Eng. Com. Law, 176; 3 Phil. Ev. (Cowen & Hill) 893–4; *Arnott* v. *Redfern*, 2 Carr & Payne, 88.

5th. The pretence that this will has been probated according to the laws of Louisiana, does not help the case of complainant, nor tend to show the courts there had jurisdiction. In *Morris* v. *Morris*, and *Sturdivant* v. *Neill*, the wills had, as this court admitted, been probated "according to the laws" of New York and Tennessee, respectively. 5 Cush. 848; Ib. 162.

And yet it was held, the courts there had "no jurisdiction" to allow an original probate of the wills. In both cases, as here, the testators were citizens of Mississippi, and died when absent from the State; but the wills were not, as in this case, made here. In *Morris* v. *Morris,* it did not appear where the property was, and that question was considered as wholly immaterial.

Upon the showing made by complainant, this court must say the will was revoked by the deed of gift, and is null; and it pertains to our courts to determine that question. We may regard the proceedings in Louisiana as analogous, precisely, to a class of cases in our own courts. An administration is granted, in a case of supposed intestacy. Afterward, an alleged will is probated, and letters are granted to the person named as executor. In such a case, it is, of course, for the Probate Court to order the administrator to account and deliver the property to the executor; and if the will is afterward found to be null, the title of the executors, as well as his letters, fails. Precisely so in this case. Mrs. Wells presented an alleged will, claiming, as universal legatee, possession of the property from the curator. She had only to prove the will, and she was entitled, under the laws of Louisiana, to receive the property, and administer upon the estate, by paying the debts. *Succession of Fisk,* 3 Ann. 705; *State* v. *Probate Judge,* 4 Rob. 42; *Fowler* v. *Boyd,* 15 La. 562; Civil Code, 1581, 1600, 1602.

It is wholly immaterial how the courts, or legislature, of Louisiana may have regarded these matters. They, as the courts did in the cases of Sturdivant and Morris, consider they had jurisdiction; this court, acting on a Mississippi will, will maintain the sovereignty of this State.

Mrs. Wells, thus claiming as universal legatee, and becoming liable for the debts, was substituted to the administration, in place of the curator, and took possession of the property; and when it now appears, that the will under which she claims is null, her title and powers must fail, precisely as would those of an executor here, under like circumstances.

But, we repeat, if this probate gave title to Mrs. Wells, and vested her with a property in the seventeen slaves, she has no claim to equitable relief; her defence to the suit at law is plain and easy.

We have thus disposed of the claim, both under the will and the

deed; and it follows, that the demurrer must be sustained, and the bill dismissed.

*H. A. H. Lawson* and *T. C. Tupper*, for appellee.

The only question now for discussion is, whether Mrs. Wells has shown title to the seventeen slaves of which her husband was possessed at his death in Louisiana.

1. The bill alleges, that this property was bequeathed to her by Bannister Wells, her husband, by his last will and testament, which is fully set forth in the bill. This allegation is not denied. It is not in any manner modified by plea or answer, but is admitted by the demurrer. The existence of a valid will, the instrument *that* vests the property in Mrs. Wells, is uncontradicted, and stands fully admitted in this proceeding.

But, it is urged, that this will has never been probated. How is this conclusion reached? Not from the allegations of the bill and exhibits; and nothing else is legitimately before the court on demurrer. The bill sets up a copy of the original will; it does not profess to state the probate, or the manner in which it was proved. The admission, by the demurrer, of the existence of the will, necessarily carries with it an admission of the probate.

But the ceremony of probating a will before the proper tribunal, is not the foundation of the title in the executor or legatee. "He derives all his title from the will itself, and the property vests in the executor (for the use of the legatee) from the moment of the testator's death." 1 Williams on Ex'rs, 159; Toller on Ex'rs, side page, 46.

And the executor may take possession of the property, and administer the same before probate. Ibid. 160, *et seq.*

·Thus, as against appellants, the admission of the existence of the will (even without probate) is an admission of title in the executrix and sole legatee, Mrs. Wells.

2. But take the record of the proceedings in this case, upon this will, of the courts of Louisiana, and the title of Mrs. Wells is fully established by the decision of the Supreme Court of that State. This judgment was rendered in a proceeding between the same parties, and involving the same subject-matter now before this court. The question of title, then, is *res judicata;* and we cannot

go behind the judgment; it is conclusive as to all the parties to that suit. But it is objected that the court that adjudicated this property to Mrs. Wells acted without jurisdiction; that the only court having jurisdiction of the matter was the Probate Court of Madison county, Mississippi; and that, therefore, the judgment in Louisiana was void. Upon this point I submit two propositions:—

1st. It does not appear, from the pleadings and proof in the case in Louisiana, or in this case, that the domicil of Bannister Wells was in Mississippi at the time of his death.

2d. If his domicil were in Mississippi, still the Louisiana court had jurisdiction of the property, and was compelled to adjudicate as to the title, and its judgment is conclusive.

1. The evidence as to citizenship, is on pages 48, 49, &c., of the record. Testator had repeatedly declared that he had left Mississippi, had separated from his wife, and did not intend to return. At the time of his death he was negotiating for the rent of some land for his slaves to work in Caddo parish, with the declared intention of purchasing this land if he liked it. He also intended to look around in Texas for a location. Now, if he had truly renounced his citizenship in Mississippi, and had taken up his residence in Louisiana, or was still undetermined as to his location, and migratory, evidently his property was under the jurisdiction of the Louisiana courts, and would have been properly administered under the Louisiana laws. In this view, there can be no doubt as to jurisdiction, and the validity of the judgment in question. But,

2. Suppose the domicil was in Mississippi; then, the property being in Louisiana, must be administered in that State, under the orders of her courts, but in accordance with the laws of the testator's domicil; that is to say, the character of the will, its validity and extent, had to be adjudicated in the courts of Louisiana, under and in accordance with the laws of Mississippi. And such was the proceeding in this case. All the parties now before the court appeared in that suit.

See answer of heirs-at-law, page 59, and agreement that they were the only heirs; and the proof of the laws of Mississippi, pp. 62 and 63.

Also see the testimony to prove the will, pages 80 to 86, conforming precisely with the requisition of our statute. Now, the

court clearly had jurisdiction of the subject-matter of the suit, the slaves in controversy.  This will not be denied.  And it is settled that, "when the subject-matter of the suit is within the jurisdiction of the court, the defendant, after answering in chief, cannot object to the jurisdiction."  *Ludlow* v. *Simond*, 2 C. C. E. 1 and 2 Eq. Dig. 146.

This is upon the principle that, when the subject-matter is within the jurisdiction, parties may bring themselves within the jurisdiction of the court.  Thus, "when non-resident defendants voluntarily answered the bill, but no property belonging to them was found in the State, nor process served on them, it was held that jurisdiction of the court could not be objected to."  *Hunts* v. *Clay*, 6 Littell, 26.  Thus, in either view of the case, the title of Mrs. Wells is established by a court of competent jurisdiction, whose decree stands in full force and unreversed.

We submit that this view does not militate against the doctrine laid down in *Sturdivant* v. *Neill*, 27 Miss. R. 157.  In that case there was nothing to administer in Tennessee, where the testator died; the property and domicil were both in Mississippi; nothing to give the court of Tennessee jurisdiction, either as to parties or the subject-matter.  And the case cited in that case, *Desesbats* v. *Berquier*, 1 Binney, 336, is a case directly in point in favor of our position.  There the property was in Pennsylvania, and had to be administered in the courts of that State.  The contest for the property was between the legatee under the will, valid by the laws of Pennsylvania, but invalid by the laws of the domicil of the testator, and the heir-at-law of the testator.  The court took jurisdiction of the whole subject and of the parties, adjudicated upon the validity of the will, and awarded the estate to the heir-at-law. This decision was conclusive between the parties.  Suppose the judgment had been different, and the property had been awarded to the legatee, would it not have been equally conclusive?  Hundreds of other cases might be cited where the decisions of courts, having jurisdiction of the subject-matter, and parties voluntarily appearing and litigating, were final and conclusive as to the parties everywhere.

Look at the consequences of holding that the decree of the Superior Court of Louisiana in this case is void, for want of jurisdiction.  In the case cited it is held that, in respect to citizens of

other States, " there is no difference between cases of succession by testament and by intestacy." Now, suppose there had been no will in this case, and the Louisiana courts had, as they did, appointed an administrator or curator, and the estate had been administered and distributed, and the property brought to Mississippi, still, according to our opponents, no title would vest in the distributee. Or, suppose the estate had been awarded to the heirs-at-law in that suit, instead of the legatee, could the legatee (Mrs. Wells), after litigating the matter fully in the courts of Louisiana, have reopened this litigation on finding the property in Mississippi?

Again : suppose this property had remained in Louisiana, it belonged to Mrs. Wells by the judgment of the highest tribunal of that State; and surely the appellants could not there have disturbed her possession. Upon what principle is it that this property, upon being removed to Mississippi, has changed owners? See *Montgomery* v. *Millikin*, 5 S. & M. 158 ; *Sims & Brothers* v. *Talbot*, 27 Miss. R. 487.

As to the objection that the deed of gift is void, being a deed of separation. This is a mistake. It is a deed of conveyance merely. Nothing is said of a separation. See the deed, p. ——. And there is no renunciation therein, or reservation of the balance of the property ; no express or implied revocation of the will. But Mrs. Wells attempts, in a separate deed, to convey this balance of the property. Now, this deed (if valid even) is not a legal renunciation, nor does it cut off her inheritance or prevent her from becoming a legatee.

I ask an examination of the whole record.

*Tupper*, for appellee.

As to the questions whether the heirs, being parties to the suit in Louisiana, are bound by the judgment: see, for all the authorities on the force and effect of judgments rendered in sister States, 2 American Leading Cases, notes to *Mills* v. *Duryee*, 719 to 745. As to wills in a foreign State, see Story's Conflict of Laws, p. 1037, § 636.

*D. Mayes*, on same side.

In addition to what has been said by my associate counsel, I

would invite the attention of the court to the following considerations. The present case is distinguishable from that of *Sturdivant* v. *Neill*, 27 Miss. R. 156, in the following particulars :—

1st. In this case the bill charges, that " Bannister Wells, then being in the State of Louisiana, and in possession of all the balance of his property not included in the aforesaid deed, departed this life, leaving a last will and testament, by which he bequeathed to your oratrix all of said property," &c. There is no answer or other pleading putting in issue the facts stated, but a demurrer admitting the facts, and the question to be adjudicated was, whether, admitting the facts, the complainant had equity. A will takes effect from the death of the testator. The executor may act under it in all respects as effectually before as after probate. The office of probate is to furnish evidence of a fact, to wit, that it is a will; and, that fact being admitted, the evidence is not necessary. Every adjudication must be on points raised in the pleadings, and the demurrer raises no question as to the making the will, or death of the testator.

2d. In the case of *Sturdivant* v. *Neill*, the testator's domicil was in Mississippi, and the property was in Mississippi. In this case, the testator's domicil was in Mississippi, but the property was, at his death, in Caddo parish, Louisiana. In the former case, had the testator been domiciled in Tennessee, but his personalty in Mississippi, that personalty would have had to be administered in Mississippi. The laws of Tennessee, as laws of Tennessee, have no force in Mississippi. They only operate here upon the principle of comity, and as laws of Mississippi, viz., the law of Mississippi is, that if a testator domiciled in Tennessee make a will of personalty, the law of Tennessee as to that case shall be the law of Mississippi, and the proceedings as to letters testamentary and of administration shall be had in the proper Probate Court of Mississippi, under the law of Mississippi applicable to that case, viz., under the law of Tennessee, adopted and made the law of Mississippi in that case, by the comity of states or nations. But, although the laws of Tennessee are to govern as to the testamentary capacity and the solemnities of execution, &c., this only relates to the principles or rules which shall govern the court which has jurisdiction, and has no connection with the question of juris-

diction. The property of Wells being in Louisiana at the time of his death, Louisiana, as a sovereign State, had the control of it. No law of Mississippi could *proprio vigore* reach it. It was only that Louisiana, as a sovereign State, would, as matter of comity, enforce the laws of Mississippi through her tribunals, that the laws of Mississippi could have any effect in Louisiana. How can we act on the principle of comity but through our own courts? We cannot do so at all. It necessarily follows, that if the laws of Mississippi are to govern in Louisiana on the personal estate of persons domiciled in Mississippi, the courts of Louisiana must have jurisdiction to inquire whether the deceased died testate or intestate, and, if testate, to grant letters testamentary, and if intestate, of administration, on the estate there situate, and which, of mere necessity, is to be there administered. I do not contend that the probate in Louisiana, established the will as to property in Mississippi, at the time of testator's death. Had Wells been domiciled in Louisiana, leaving personalty in Mississippi, his will would have to be probated and letters testamentary obtained in Mississippi, as to the Mississippi assets. Letters testamentary in one State do not authorize the administration of effects in another. Each sovereign grants letters to administer effects left within its limits, but, by reason of comity, gives effect to the laws of the domicil to a certain extent. Had the will been proved in Madison Probate Court, Mississippi, and letters granted, the executors could not in virtue of such letters, use or administer in Louisiana.

3d. But further, the Probate Court, viz., the District Court of Caddo, having probate jurisdiction, granted letters to Hardwick. The heirs, here defendants, and Mary Wells, here complainant, regularly litigated their rights, before the same court, in a proceeding *inter partes*, the former claiming as heirs, and Mary Wells as legatee. The property being in Caddo, the court had jurisdiction of the subject-matter. The heirs and legatee having appeared, the court had jurisdiction of their persons. The court proceeded to decree on their respective rights: it was held that Mary Wells, as legatee, was the owner of the property, and it was decreed to her accordingly; that decree was appealed from, and affirmed by the highest judicial tribunal in the State. Why is not that adjudication of the very matter here in controversy final and conclusive?

By the Constitution of the United States it is so, even if the court adjudicating on those rights erred.

HARRIS, J., delivered the opinion of the court.

The appellee filed her bill in the Superior Court of Chancery, enjoining the appellants from prosecuting their actions at law, to recover a large estate, real and personal, in the possession of appellee, in this State.

The bill charges, that the appellee, about the 1st January, 1835, being in possession in her own right, of a large property, real and personal, intermarried with one Bannister Wells, now deceased, who then owned but little if any property. That, on the 22d January, 1849, the said Bannister Wells, to secure to appellee a comfortable support, conveyed to her by deed of that date, all of his real estate, and the largest portion of his personal property, described in the deed (Exhibit A.), and duly acknowledged and recorded. That she has remained in the possession and use of the property to this time, and has paid all the debts of said Wells, according to the requisitions of the deed. That, about the 6th February, 1849, the said Bannister Wells, then being in the State of Louisiana, and in possession, there, of all the balance of his property, departed this life, leaving a *will*, by which he bequeathed to appellee all of said property last named, consisting principally of slaves (Exhibit B.). That said will was duly probated in the State of Louisiana, and by virtue thereof, the said property therein mentioned, was delivered to appellee, and by her removed to her house in Madison county, Mississippi. A schedule of which property, marked Exhibit C., is filed; and an authenticated copy of the will, with a transcript of the record of the probate thereof, offered to be procured and filed, if required.

Appellee charges that, in virtue of the premises, she became exclusively entitled, in justice and equity, to all the estate aforesaid, and has remained in the possession and enjoyment thereof.

That appellants, notwithstanding these facts, have obtained letters of administration on the estate of said Bannister Wells, in the Probate Court of Madison county, Mississippi, and in that character instituted actions at law for the recovery of said personal property, in said county of Madison; and as heirs-at-law of said Bannister

Wells, have instituted suit for the real estate in said county, and threaten suit for the lands in Scott and Leake counties.

Prayer for perpetual injunction, and for general relief.

To this bill the appellants demurred. 1st. Because the will was revoked by the deed, and the deed is void. 2d. If the will were valid, appellee could assert no claim under it, until probated in this State.

The demurrer was overruled in the court below, and the case brought here by appeal from that decision.

Confining ourselves, under the well-established practice of this court, to the points raised upon demurrer in the court below, three questions are presented for the consideration of this court.

1st. Was the will of Bannister Wells revoked by the subsequent deed ?

2d. Is that deed void ?

3d. Admitting the validity of the will, could the appellee assert claim under it, in Mississippi, to property in Louisiana, at the death of decedent, and decreed to her by the judgment of the courts of Louisiana, until the will had been probated in this State?

1st. Was the will revoked by the deed before us ?

Admitting the doctrine of implied revocation as still existing in our State, notwithstanding our statute, yet to give to a deed or other conveyance such operation, it has long been settled, that there must be a subsequent conveyance of the *whole estate.*

The doctrine of implied revocation, proceeds mainly upon the principle of presumed intention, and such presumption may be rebutted by circumstances. Douglas, p. 31; 4 John. C. R. 506; 3 Call, 334.

If the inconsistency, between the will and the deed subsequently made, be merely partial, the revocation will not extend beyond such inconsistency; because the law will presume the testator intended only a revocation *pro tanto,* and not *in toto.* Cowp. 90; 2 Vern. 720; Tol. 19; 2 Ves. Jr. 428; 3 John. C. R. 148; 14 John R. 324; 7 Tenn. R. 416–17.

Indeed, as no change of intention can be inferred in this case, either as to the object of his bounty, or the subject of the gift, from the subsequent conveyance of a part of the same property to the same donee or grantee by the testator, the conclusion would seem

to be inevitable that the deed must be regarded as affecting the disposition of the will only *pro tanto*.

2d. Is the deed void? It is said it is void (being made by a husband to his wife), unless it be shown that it conveys to her " only a reasonable provision" out of her husband's estate.

The ground of demurrer relied on is the *invalidity of the deed;* not the sufficiency of the allegations in the bill, as to whether the "provision was reasonable" or not. The demurrer assumes that the bill shows upon its face, without reference to extrinsic facts, that the deed is void.

That it is not void in equity, simply because it is between husband and wife, has been repeatedly adjudicated in this court. *Ratcliffe* v. *Dougherty*, 24 Miss. R. 182; *Warren* v. *Brown et al.* 25 Ib. 73; *Wells* v. *Treadwell*, 28 Ib. 724. And, so far as concerns the "reasonableness of the provision," as exhibited by the facts stated in the bill, we are not prepared to say that they are such as to render this deed void.

The argument of counsel on this point is, " that the bill not only fails to show the provision to be 'reasonable,' but it shows it to be unreasonable, palpably so;" and, for that reason, the deed is void, and the demurrer on this ground should have been sustained.

The bill shows that, at the time of her marriage, in 1835, with the testator, appellee had a large property, real and personal; that testator owned but little, if any property; that, on the 22d January, 1849, testator, to "secure to appellee a comfortable support," executed this deed, which, on its face, purported to be of only a part of his estate.

If we are to look outside of the bill and exhibits before the court, on this demurrer to the Louisiana proceedings, which were *offered* to be filed, if required, it still further appears that appellee, in addition to the payment of the one thousand dollars recited in the deed, bound herself to pay all the debts of testator; and that the testator received and took with him, at the time of this provision, to Louisiana, seventeen slaves, besides mules, wagon, money, &c.; leaving complainant and appellee twenty-six negroes, land, stock, household furniture, &c.

It may be, for aught we can know upon this demurrer, that there are other circumstances, connected with those already named, ren-

dering the arrangement made not only not "unreasonable," so far as relates to the interest of the appellee, but exceedingly liberal to the husband. A court of chancery should look at the provision in the light of all the circumstances which surround the parties; and in the absence of creditors, or subsequent purchasers, and in the absence of any contest between the husband or his children and the wife, a provision, mutually satisfactory to the husband and wife, should be very reluctantly disturbed. Sound policy and sound morality equally forbid that courts of justice should set the example of depriving the wife (often the meritorious source of the husband's fortune) of the acquisitions of her lifetime labor, and care, to reward the hungry idlers who so often clamor in these halls after property for which they have not toiled.

We think the bill shows sufficient, upon its face, to sustain the validity of the deed in a court of equity.

3d. The last point of inquiry for our consideration is, whether, admitting the validity of the will, the complainant and appellee can claim title to the property therein bequeathed to her, by virtue of the probate of the will, and proceedings had thereon, in the State of Louisiana.

It is assumed, in argument, that, as the will was made in the State of Mississippi, and the testator's domicil was also in this State, notwithstanding the property claimed by the appellee under the will was in Louisiana, at the death of the testator, still the courts of Louisiana had no jurisdiction over it; and the appellee could only assert her title to the bequest by virtue of probate in the courts of Mississippi; and, for this position, we are referred to the cases of *Sturdivant* v. *Neill et al.* 27 Miss. R. 157; and *Morris* v. *Morris*, Ib. 847.

In the case of *Sturdivant* v. *Neill*, both at the date of the will and at the death of the testator, he was a resident citizen of the State of Mississippi, and his property was also here. The testator, while on a journey, died in the State of Tennessee, where he made his will. The will was probated in the State of Tennessee, "according to the laws of Tennessee."

"The question on this state of the case (says the court) is, whether that court had jurisdiction over the subject-matter." The court very properly decides that, for want of jurisdiction, the judg-

ment of the Tennessee court was void as to the property in dispute, and afforded no evidence of probate of the will in the courts of Mississippi, where this property was situate.

The court does not determine, if the *property had been in Tennessee,* instead of Mississippi, that the probate in Tennessee would have been void "for want of jurisdiction over the *subject-matter.*"

The case of *Morris's Ex'r* v. *Morris,* was peculiarly similar in its main features. The testator was a resident citizen of Mississippi. On a visit to his relatives in New York was taken sick there, made his will and died there. The will was probated there, "according to the laws of New York;" his property situate here in Mississippi. The rule in *Sturdivant* v. *Neill* was applied; and, we think, properly.

This case is, however, important in the decision of the case under consideration. In commenting on the case of *Montgomery et ux.* v. *Millikin et ux.* 5 S. & M. 151, after showing that, by the local law of Louisiana, a will, executed according to the local laws of the place where it was made, was valid in Louisiana; and that the property administered on in that case was in Louisiana; and that the will relied on had been probated in Kentucky, and certified to Louisiana, where it was admitted to record, and ordered to be executed, the court proceeds to say: "The only question which was necessary to be decided by the court (in the case of *Montgomery and wife* v. *Millikin and wife*) was, whether the will was valid, and had been so established by the proper court in Louisiana. The judgment of the court in that State would be conclusive on that subject, and was all that our courts could require in regard to the personal estate."

To enable a party, claiming title to property under a will, to avail himself of such will, as evidence of the bequest, it must appear to have been regularly probated in the *jurisdiction* where the property is situated, is further illustrated by the decision of this court in the case of *Fotheree and wife* v. *Lawrence,* 30 Miss. R. 416.

But, in no case has it been decided here or elsewhere, in our knowledge, that property, legally situate within one State, and already disposed of and administered in its courts by its laws, can be affected by administration, or the want of it, in another State.

Each State has the right to govern and regulate all the property

within its limits, without regard to the residence of the owner. It has the right to prohibit and exclude the operation of the *lex domicilii*, if it choose to do so; but, when no such prohibitory laws exist, either express in their terms, or of most manifest intent, the law of the domicil governs both as to transfers *inter vivos*, and testamentary dispositions. *Garland, Ex'or,* v. *Rowan,* 2 S. & M. 634, citing authorities.

This rule, of almost universal recognition,—that the law of the domicil must furnish other jurisdictions, in other States or countries, the law by which to regulate the succession or distribution of personalty, as well as the validity of testaments in relation thereto,—is a rule of comity, to be enforced, or not, according to the will of each sovereign; because, all property within its limits, must be bound by the laws of such sovereignty. *Mahorner* v. *Hooe et al.* 9 S. & M. 274.

In the absence of any positive law of its own, varying this rule of comity, each State, in administering and disposing of personal property within its jurisdiction, executes and administers the law of the testator's domicil, through its own tribunals. Its judgments and proceedings, when regular, according to its laws, between parties properly before it, over property within its jurisdiction, must be conclusive everywhere, as already seen from the citation of *Morris* v. *Morris,* 27 Miss. R. 851.

Judgments of the courts of this State, and of sister States, stand upon the same footing, and are of equal validity in this respect. They are conclusive *inter partes*, and operate as an estoppel by the record, from denying their obligatory force, where the jurisdiction of the court affirmatively appears. *Miller et al.* v. *Ewing et al.* 8 S. & M. 421.

In this case, the record shows that the parties were personally in court, and litigated, in Louisiana, the matters now sought to be brought before our courts, in relation to the validity of this will, and the rights of the respective parties under it. That litigation was terminated by the judgment of the courts of Louisiana, and, as we think, rightly, in the end. The property was situate there, and, having jurisdiction of both the property and the persons of their parties, they cannot be heard to relitigate in our courts the matters that have been thus rightfully adjudicated.

Let the order of the court below, overruling the demurrer to complainant's bill, be affirmed, and cause remanded for further proceedings.

Handy, J., having once been of counsel in this case, took no part in the decision of it.